UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRYSTAL CASTILLO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>THE WELL COMMUNITY CHURCH, a California Corporation,<br><br>　　　　　Defendant. | No. 1:21-cv-01460-ADA-BAM<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE<br><br>(ECF Nos. 6, 9) |

This matter is before the Court on a motion to dismiss filed by Defendant The Well Community Church.[1] (ECF No. 6.) For the reasons explained below, the Court will grant, in part, and deny, in part, Defendant's motion to dismiss.

## BACKGROUND

**A. Procedural History**

Plaintiff Krystal Castillo filed a Complaint for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964; interference with prospective economic relations; and defamation; under federal question jurisdiction on September 29, 2021. (ECF No. 1.) Prior to her Complaint, Plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC)

---

[1] The legal name of Defendant, as it is written in its Articles of Incorporation on the Secretary of State website, includes the preceding article "The."

1

against Defendant on July 19, 2021.  (ECF No. 1 at 2.)  The EEOC instructed Plaintiff of her right to sue on September 24, 2021.  (*Id*.)  On October 20, 2021, Defendant moved to dismiss Plaintiff's Complaint for failure state a claim.  (ECF No. 6.)  Plaintiff opposed on November 23, 2021 (ECF No. 8), and requested judicial notice of her Complaint pursuant to Federal Rule of Evidence 201 (ECF No. 9).  Defendant replied on November 30, 2021, silent concerning Plaintiff's request for judicial notice.[2]  (ECF No. 10.)

### B. Factual Background

The following facts are reproduced from Plaintiff's Complaint (ECF No. 1):  Defendant employed Plaintiff, who is a Hispanic female, from June 22, 2020, until her discharge on June 3, 2021.  (*Id*.)  Plaintiff, a duly qualified Licensed Marriage Family Therapist, performed in a satisfactory manner.  (*Id*. at 2.)  Defendant hired Plaintiff to replace a White woman, Wendi Mooney, who left voluntarily.  (*Id*. at 3.)  During her employment, Plaintiff observed Defendant treated her and other Hispanic employees differently than White employees.  (ECF No. 1 at 3.)  For example, Plaintiff observed that Defendant allotted less funding to its Hispanic ministry and it gave less access to resources and provided work facilities that were less desirable to its Hispanic employees.  (*Id*.)  Plaintiff also observed that Defendant failed to act on a complaint concerning a White employee's racist comments about a Black employee; however, when a White employee later made a baseless complaint about Plaintiff's conduct, Plaintiff was reprimanded and terminated.  (*Id*.)

In February 2021, a White male coworker made offensive, sexually-oriented comments to Plaintiff, including telling Plaintiff that he viewed pornography and asking her if she had sex with her husband.  (ECF No. 1 at 3.)  Plaintiff was offended and distressed and complained to Chris Shultz, Defendant's Executive Pastor of Ministry, about sexual harassment.  (*Id*.)  To Plaintiff's knowledge, Defendant took no action despite several requests from Plaintiff.  (*Id*.)

---

[2] Plaintiff requests the Court take judicial notice of her Complaint in support of her opposition to Defendant's motion to dismiss.  (ECF No. 9.)  The Court construes this request as an argument for it to hold the pleadings as true, however, it is already so required under precedent.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989) [requiring the Court accept as true the allegations in a complaint when determining whether it states a claim on which relief may be granted].  Plaintiff's request is denied.

In April 2021, Wendi Mooney returned. (ECF No. 1 at 3.) Mooney subjected Plaintiff to unwarranted criticism and treated her in a condescending manner. Plaintiff is informed and believes that Mooney's treatment was motivated by animus toward Hispanics. (*Id*.) Plaintiff complained about Mooney's conduct, but Defendant ignored her complaints. (*Id*.) After Plaintiff complained, Jeremy Vanderlinden, Executive Pastor of Operations and Development, told Plaintiff to put her "big girl pants on." (*Id*.) Plaintiff alleges this statement demonstrated bias against females and was offensive to Plaintiff. (*Id*.)

Brad Bell, Defendant's Lead Pastor, Mooney, and possibly others made false statements about Plaintiff to others, including, but not limited to, the Board of Directors of The Well Counseling Center, Inc., to the effect that: (1) Plaintiff was incompetent; (2) Plaintiff was not "teachable"; (3) Plaintiff never "stepped up"; and (4) Plaintiff was "just not The Well-type staff." (ECF No. 1 at 4.) Vanderlinden made false statements about Plaintiff to others, including, but not limited to, Cindy Karraker, to the effect that: (1) Plaintiff was a poor leader; (2) Plaintiff was not a team player; and (3) Plaintiff was punitive toward staff of the counseling center. (*Id*.) On June 3, 2021, Defendant terminated Plaintiff's employment without giving a reason. (*Id*.) Plaintiff is informed and believes that Defendant terminated her employment because she is Hispanic, it wanted to replace her with a White person, and because she complained about sex discrimination and harassment. (*Id*.)

After Defendant terminated Plaintiff's employment, it cancelled all the appointments Plaintiff had with clients without telling them how to contact her to be treated at her independent therapy practice if they chose to do so. (ECF No. 1 at 4.) Defendant contacted at least one of Plaintiff's clients and suggested that they could continue counseling with another of Defendant's therapists. (*Id*.) This client was a community-based referral to Plaintiff and was not originally a client of The Well Counseling Center, Inc., therefore, Plaintiff alleges, Defendant interfered with Plaintiff's independent therapy practice. (*Id*.)

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be

based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though Rule 8(a) does not require detailed factual allegations, a plaintiff is required to allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (*Twombly*); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (*Iqbal*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In determining whether a complaint states a claim on which relief may be granted, the Court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).

## ANALYSIS

**A. Plaintiff sufficiently pleaded her discrimination claim.**

The Title VII statutory scheme makes it unlawful for an employer to "discriminate against any individual with respect to [their] compensation, terms, conditions, or privileges of employment, because of that individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To prevail in a Title VII case, Plaintiff must establish a prima facie discrimination case. *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003). A prima facie case of unlawful race or sex discrimination requires Plaintiff to show (1) she belongs to a protected class; (2) she qualified for her position and satisfactorily performed her job; (3) she suffered an adverse employment action; and (4) that either similarly situated individuals outside her protected class were treated more favorably, or that other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *See, e.g.*, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 355 (2000). When deciding Title VII matters on a question of law, "minimal proof" is necessary to establish a prima facie case; it "does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

Defendant argues Plaintiff's "vague and conclusory allegations" fail to plead the requisite fourth element of unlawful discrimination; therefore, Plaintiff does not plead sufficient facts to state a claim for relief from unlawful race or sex discrimination. (ECF No. 6-1 at 6-8.)

**1. Race Discrimination**

Defendant argues three instances of insufficiency in Plaintiff's unlawful racial discrimination pleadings: (1) Plaintiff does not specify how she knows the Hispanic ministry was allotted less funding, how the facilities Defendant gave the Hispanic ministry were less desirable, and to which group she is comparing that disparate treatment to (ECF No. 6-1 at 7); (2) Plaintiff does not explicitly allege that she was terminated because of her race (*id*.); and (3) Plaintiff's allegations concerning Mooney's motives are conclusory because "unwarranted criticism" and being treated "in a condescending manner" do not rise to discrimination—isolating the allegation, Defendant argues Plaintiff's "mere subjective belief" Mooney was motivated by animus towards Hispanics is not enough to sustain her claim (*id*.).

Plaintiff argues she "need not prove her case as an evidentiary matter, but need only allege facts that support a claim for relief" at this stage. Plaintiff recites the facts stated in the pleadings, arguing she has met her burden to allege facts that support a claim for relief. (ECF No. 8 at 5.)

Plaintiff is correct; she has alleged sufficient facts to demonstrate her race discrimination claim. First, Plaintiff is not required to meet the level of specificity Defendant contends to sufficiently plead unlawful discrimination. "This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss . . . [W]e have rejected the argument that a Title VII complaint requires greater 'particularity,' because this would 'too narrowly constric[t] the role of the pleadings.'" *Swierkiewicz v. Sorema N. A*., 534 U.S. 506, 511 (2002); *see also Twombly*, 550 U.S. at 570 ["[T]he [*Swierkiewicz*] Court of Appeals had impermissibly applied what amounted to a heightened pleading requirement by insisting that Swierkiewicz allege 'specific facts' beyond those necessary to state his claim"].) Thus, "while the *McDonnell Douglas* prima facie case is a useful touchstone in evaluating whether plaintiff has a plausible claim, [plaintiff] is 'not required to plead a prima facie case of discrimination in order to

5

survive a motion to dismiss.' [(Citations)]." *Duke v. City Coll. of San Francisco*, 445 F. Supp. 3d 216, 232 (N.D. Cal. 2020).

Additionally, Plaintiff pleads multiple factual allegations that "give rise to an inference of discrimination," demonstrating the fourth *McDonnell Douglas* factor throughout her Complaint. The Court interprets the "but for" causation test embedded within the Title VII statute to mean "an employer who intentionally treats a person worse because of [race or] sex—such as by firing the person for actions or attributes it would tolerate in an individual of another [race or] sex—discriminates against that person in violation of Title VII." *Bostock v. Clayton Cnty., Georgia*, 207 L. Ed. 2d 218, 140 S. Ct. 1731, 1740 (2020) [discussing the application of 42 U.S.C. § 2000e-2].[3] First, Plaintiff alleges that Defendant allocated less resources and less desirable facilities to Hispanic employees and the operative comparative adjective in her pleading is the word "less." While Defendant's contention that Plaintiff must allege "who Hispanic employees were treated less favorably than" (ECF No. 6-1 at 7 ["And who, or which group, received more funding than Hispanics?"]) in this context is unnecessary and misguided, Plaintiff explicitly names that group to be "White employees" in the preceding sentence before giving examples of the alleged disparate treatment (ECF No. 1 at 3).

Second, Plaintiff alleges Defendant ignored complaints taken *from* Black or Hispanic employees about White employees, such as Plaintiff's complaints about Mooney, the complaint concerning a White employee who made racist remarks about a Black employee, and Plaintiff's sexual harassment complaint concerning her White male coworker; but Defendant acted upon complaints taken *about* Hispanic employees, such as those from Mooney about Plaintiff. (ECF No. 1 at 3.) Defendant tolerated these actions—making complaints—in Mooney, who is a similarly situated, White employee; however, when Plaintiff, a Hispanic female, complained, Defendant allegedly terminated and defamed her. (*Id.*) Further, Plaintiff pleads Defendant did not address

---

[3] *But see Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013) ["An employee who alleges status-based discrimination under Title VII need not show that the causal link between injury and wrong is so close that the injury would not have occurred but for the act. So-called but-for causation is not the test. It suffices instead to show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision"].

Mooney's conduct upon Plaintiff's complaints, instead instructing Plaintiff to "put her 'big girl pants on'" in response to her racial discrimination complaints, but it took seriously Mooney's complaints against Plaintiff, conceivably impacting Plaintiff's termination. (*Id*.) For these reasons, Plaintiff's pleadings give rise to an inference of discrimination, supporting her claims of Mooney's alleged racial animus towards Hispanic people.

Taken together, Mooney's "criticism and attitude problem," as characterized by Defendant, with Plaintiff's other allegations plead unlawful discrimination in sufficient detail to survive Defendant's motion to dismiss.

### 2. Sex Discrimination

Defendant contends it is unclear how Plaintiff's "conclusory" allegation a White male coworker "made offensive, sexually-oriented comments to her," including inquiring about sex she had with her husband and telling her that he watches pornography, could constitute actionable sex discrimination. (ECF No. 6-1 at 8.) Defendant argues Plaintiff's pleading is insufficiently pleaded because she does not specifically plead that Defendant failed to act on her sexual harassment complaint because of her sex. (*Id*.) Additionally, Defendant argues its alleged failure to act does not necessarily constitute sex discrimination, hypothesizing "perhaps an investigation revealed that [Plaintiff's complaints were] unfounded."[4] (*Id*. at 8-9.) Finally, Defendant doubts the severity of Plaintiff's allegations, arguing Vanderlinden's "put [your] big girl pants on" statement "does not show []Defendant was biased against Plaintiff or female employees." (*Id*.) Effectively, Defendant argues Plaintiff has failed to plead sufficient facts to satisfy the fourth *McDonnell Douglas* factor.

Plaintiff argues she has alleged sufficient facts to demonstrate her discrimination claim because she explains the conduct she alleges constituted sexual harassment. (ECF No. 8 at 5-6.)

Plaintiff is correct: she need not plead Defendant discriminated against all its female employees to sustain her claim; it is enough to plead facts constituting sexual harassment. *Bostock v. Clayton Cnty., Georgia*, 207 L. Ed. 2d 218, 140 S. Ct. 1731, 1740 (2020) [stating Title VII protects individuals from discrimination based on membership in a protected class]; *id*. at 1744

---

[4] The Court must take the pleadings as true; thus, it declines to entertain Defendant's hypothetical because it asks the Court to decide the motion considering facts neither pleaded nor inferable.

["the plaintiff's sex need not be the sole or primary cause of the employer's adverse action . . . an employer cannot escape liability by demonstrating that it treats males and females comparably as groups"]; *id*. at 1747 ["'Sexual harassment' is conceptually distinct from sex discrimination, but it can fall within Title VII's sweep" [Citation]]; *id*. at 1752 ["[S]exual harassment can sometimes amount to sex discrimination" [Citation]].

Plaintiff alleges she repeatedly brought her complaints of her coworker's sexually oriented comments to Defendant's view, and yet, Defendant failed to take any corrective action after stating that it would, which is sufficient to state a claim for sex discrimination. *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 647 (9th Cir. 2021) ["[I]t is well established that an employer can create a hostile work environment by failing to take immediate and corrective action in response to a coworker's or third party's sexual harassment or racial discrimination the employer knew or should have known about. All federal circuits are in accord on this point"]. "When severity is questionable, 'it is more appropriate to leave the assessment to the fact-finder than for the court to decide the case . . . .'[Citation]" on a motion requiring a decision on the matter as a question of law. *Id*. at 648.

In addition to meeting the requisite pleading standard outlined above as opposed to the heightened pleading standard Defendant argues applies, Plaintiff's sex discrimination claim is also sufficiently pleaded to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Accordingly, the Court denies Defendant's motion to dismiss Plaintiff's first claim.

**B. Plaintiff sufficiently pleaded her retaliation claim.**

Defendant argues Plaintiff does not allege she was engaged in protected activity, and that Plaintiff does not plead that Shultz, the managing employee Plaintiff reported the sexual harassment to, influenced Plaintiff's termination or reported her complaints to an employee who did, therefore, Defendant cannot be held liable for terminating Plaintiff without knowledge of her complaints. (ECF No. 6-1 at 8-9.) Plaintiff argues she has alleged sufficient facts to support her retaliation claim and argues the "cat's paw" theory of liability applies to Defendant's contended lack of knowledge. (ECF No. 8 at 6-7.)

8

For a prima facie case of retaliation under Title VII, "an employee must show that (1) [s]he engaged in a protected activity; (2) h[er] employer subjected h[er] to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).

Plaintiff alleges she engaged in protected activity when she alleges she complained to Defendant about both Mooney's behavior and the lewd comments of her White male coworker. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) ["[A]n employee's complaints about the treatment of others is considered a protected activity, . . . even if the discrimination[] complained about was not legally cognizable"]; *id*. at fn. 3 ["Making an informal complaint to a supervisor is also a protected activity"]. "Plaintiff further alleges that after she made these complaints, she was replaced, criticized, demeaned, and ultimately terminated." (ECF No. 8 at 6.)

Finally, "causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air, Inc*., 281 F.3d 1054, 1065 (9th Cir. 2002) (*Villiarimo*). Plaintiff alleges she first complained of sexual harassment in February 2021 and repeatedly approached Shultz about her complaint in the months following. This is where Plaintiff argues, in opposition, its "cat's paw" theory of liability would apply. *See Shager v. Upjohn Co*., 913 F.2d 398, 405 (7th Cir. 1990) (explaining "cat's paw" theory of liability in employment law ["If [the employee] acted as the conduit of [the company's] prejudice—[its] cat's-paw—the innocence of its members would not spare the company from liability"]; *see also Sandowski v. McAleenan*, 423 F. Supp. 3d 959, 979 (D. Haw. 2019) (applying cat's paw liability theory to third prong of retaliation prima facie case under Title VII) ["By showing that a supervisor retaliated against the plaintiff by causing management to fire him, the plaintiff can demonstrate that his termination was caused by protected activity"]; *see also Acosta v. Brain*, 910 F.3d 502, 514 (9th Cir. 2018) [applying cat's paw theory liability in Title VII retaliation matter); *see generally Staub v. Proctor Hosp*., 562 U.S. 411, 416, fn. 1 (2011) (applying "cat's paw" liability theory).

In addition to Plaintiff's proposed cat's paw theory of liability, Plaintiff pleads her complaints were made within three months of her termination in June 2021, sufficiently pleading a temporal causal link. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) [sufficient

9

evidence existed where adverse actions occurred less than three months after complaint filed]; *see also Villiarimo*, 281 F.3d at 1065 [no sufficient evidence where adverse action occurred a year after protected activity].

As such, the Court denies Defendant's motion to dismiss Plaintiff's second claim.

**C. Plaintiff failed to sufficiently plead interference with prospective economic relations.**

    **1. The Court will grant Defendant's motion to dismiss Plaintiff's claim.**

The California Supreme Court has articulated and refined the requisite elements of a prima facie interference with prospective economic relations claim. Adopting the *Buckaloo v. Johnson* 14 Cal.3d 815, 827 (1975) factors in origin, the basic elements require: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." [Citations].'" *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1153 (2003). The Court expounded upon the third element in *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376, 392-93 (1995) (*Della Penna*), clarifying, "a plaintiff must plead and prove that the defendant's acts are wrongful apart from the interference itself" to establish a claim for interference with prospective economic relations. *Id*. (citing *Della Penna*). This tort is not intended to punish for choice of business relationship or pursuit of capitalist objectives, "unless []interference amounts to independently actionable conduct." *Marin Tug & Barge, Inc. v. Westport Petroleum, Inc*. 271 F.3d 825, 832 (9th Cir. 2001) (*Marin Tug*). "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard," including by independent tortious means. *Marin Tug*, 271 F.3d at 835; *accord Della Penna*, 11 Cal.4th at 408 (conc. opn. of Mosk, J.) ["[T]he tort may be satisfied . . . by independently tortious means"]; *see also CRST Van Expedited, Inc. v. Werner Enterprises, Inc*., 479 F.3d 1099, 1110 (9th Cir. 2007) (*CRST Van Expedited, Inc*.).

Defendant argues Plaintiff has failed to state a claim for interference with prospective economic relations for two reasons. First, Defendant argues Plaintiff does not allege sufficient facts

10

1  showing that she ever *directly* received compensation from any clients during her employment with
2  Defendant, revealing that Plaintiff's "so-called clients" were clients of Defendant's The Well
3  Counseling Center, Inc. (ECF No. 6-1 at 10.) Therefore, there is no business relationship to protect
4  as relief can be granted under this tort only for tortious interference with an existing relationship.
5  (*Id*.) Second, Defendant argues Plaintiff has not sufficiently pleaded facts demonstrating
6  Defendant's conduct was unlawful. (ECF No. 6-1 at 11.)

7  Plaintiff argues, in essence, Defendant was merely an intermediary; clients were paying her
8  through Defendant and for her services, not Defendant's services. (ECF No. 8 at 7.) Further,
9  Plaintiff argues she has alleged "wrongful" conduct by alleging "that Brad Bell, Wendi Mooney[,]
10 and possibly others made false statements about her competency and told clients not to go to
11 Plaintiff for therapy." (ECF No. 8 at 7.)

12 Defendant's first contention demonstrates a misunderstanding of the applicable precedent.
13 As shown above, California's required independently wrongful act to establish intentional
14 interference with prospective economic relations seeks "to allow greater liberty of competitive
15 forces where no contract yet exists." *CRST Van Expedited, Inc*., 479 F.3d 1099, 1111 (9th Cir.
16 2007); *see also Blank v. Kirwan*, 39 Cal.3d 311, 330 (1985) ["'reasonable expectation of economic
17 advantage which would otherwise have accrued to him . . .'(*Campbell v. Rayburn*, 129 Cal.App.2d
18 232, 234 (1954) [defining economic advantage and business relationship as the "reasonable
19 probability that the plaintiff would have entered into a contract [with] or made a profit [from]" the
20 third party]"]). Plaintiff does not need to establish the existence of a business relationship, only
21 allege facts indicating she had a reasonable expectation of one, which she does, given that these
22 clients were in an existing therapist-patient relationship with her directly.

23 Defendant's second argument, however, is correct. Plaintiff does not explicitly allege in
24 her Complaint that Defendant defamed her to clients in order to convince those clients to
25 discontinue therapy sessions with her in her independent practice. Plaintiff alleges only that
26 Defendant defamed her to "third parties," "prospective employers," and "others not a party to this
27 action." (ECF No. 1 at 6-7.) Regarding her clients, Plaintiff alleges only that Defendant contacted
28 a community-based referral to Plaintiff and "suggested that they could continue counseling with

1  another of [Defendant's] therapists." (ECF No. 1 at 4.)  As advertising is not "wrongful" conduct, Plaintiff does not sufficiently allege facts that state a claim to relief for interference with prospective economic relations.

Therefore, the Court grants Defendant's motion to dismiss Plaintiff's third claim.

### 2. The Court will grant Plaintiff leave to amend the deficient, third claim.

Defendant argues Plaintiff's claim must be dismissed without leave to amend.  (ECF No. 6-1 at 11.)  "Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc*., 518 F.3d 1042, 1051 (9th Cir. 2008).  To the extent that the pleadings can be cured by the allegation of additional facts, however, courts will generally grant leave to amend.  *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc*., 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).  "The court considers five factors in assessing the propriety of leave to amend—bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint."  *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

Because there exist factual scenarios where this claim could attach, such as those made in Plaintiff's opposition, Plaintiff's third claim for relief is dismissed with leave to amend.  Neither party posits evidence of bad faith, neither party has caused undue delay in briefing this matter, amendment would not likely cause prejudice in this instance, amendment would clarify whether Plaintiff can state a claim for relief from interference with prospective economic relations, and Plaintiff has never amended her Complaint.

Accordingly, the Court will grant Plaintiff leave to amend her third claim.

### D. Plaintiff sufficiently pleaded her defamation claim.

Defendant argues Plaintiff's defamation claim fails to state a claim for which relief can be granted.  (ECF No. 6-1 at 11-12.)  "The tort of defamation 'involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.' ([Citations.])"  *Taus v. Loftus*, 40 Cal.4th 683, 720 (2007) (overruled on another ground as stated in *Burrill v. Nair* (2013) 217 Cal.App.4th 357, 380).  Defendant argues the alleged defamatory statements are unactionable statements of opinion "similar to what one

might find on an employee review" (ECF No. 6-1 at 12); thus, Defendant argues Plaintiff fails to satisfy the requisite fourth element of defamation per se.  Specifically, Defendant argues its statements are protected by a qualified privilege shielding "communications among a company's employees concern[ing] the conduct of an employee" that require showing "ill will" to overcome.  (*Id*.)  Plaintiff argues no such privilege applies where, as here, an employer uses false statements to "accuse the employee of lack of integrity, dishonesty[,] or incompetence."  (ECF No. 8 at 8.)

Plaintiff is correct.  "[E]xpressions of "opinion" may often imply an assertion of objective fact." *Milkovich v. Lorain J. Co*., 497 U.S. 1, 18 (1990).  "[W]here an expression of opinion implies a false assertion of fact, the opinion can constitute actionable defamation.  [(*Id*.)]  The critical question is not whether a statement is fact or opinion, but "'whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact'" [citation]," when considering the totality of the circumstances.  *GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal.App.4th 141, 156 (2013).  "[W]hile communications of an 'employer's perceptions about an employee's efforts, attitude, performance, potential[,] or worth to the enterprise,' even if objectively false, are considered opinions, statements concerning an employee's criminal conduct or lack of 'honesty, integrity, competence, or that [s]he had reprehensible personal characteristics' may be subject to a defamation claim if they are false." *Bowles v. Constellation Brands, Inc*., 444 F. Supp. 3d 1161, 1174 (E.D. Cal. 2020) (citing *Gould v. Maryland Sound Indus., Inc*., 31 Cal.App.4th 1137, 1153-54 (1995)) (quoting *Jensen v. Hewlett–Packard Co*., 14 Cal.App.4th 958, 965, (1993) (*Jensen*)).

To determine the "totality of the circumstances," this Court first examines "the language of the statement" for whether it "must be understood in a defamatory sense"; next, "the context in which the statement was made must be considered." *Baker v. Los Angeles Herald Exam'r*, 42 Cal.3d 254, 260-61 (1986) (*Baker*).  The statement "must be read as a whole in order to understand its import and the effect which it was calculated to have on the reader [citations], and construed in the light of the whole scope and apparent object of the writer, considering not only the actual language used, but the sense and meaning which may have been fairly presumed to have been conveyed to those who read it." *Id*. at 261.  Contextually, the Ninth Circuit contrasts "opinion

1    statements based upon expressly stated facts with opinion statements based on implied, undisclosed
2    facts." *Franklin v. Dynamic Details, Inc.*, 116 Cal.App.4th 375, 386 (2004).  Notably, there is
3    "strong judicial disfavor for libel suits based on communications in employment performance
4    reviews." *Jensen*, 14 Cal.App.4th at 964.

5    In *Jensen*, the alleged defamatory statements arose from an employee evaluation of the
6    plaintiff by one of the defendant's managing employees for review by only managing employees.
7    *Jensen*, 14 Cal.App.4th at 970.  The evaluation was 14-pages long, specified the employer's
8    performance measurement criteria, and allowed an employee rating of "exceptional," "very good,"
9    "good," "acceptable," or "unacceptable,"—as defined in the document—in each criterion. *Id.* at
10   966, fn. 3.  The defendant's managing employee commented on the plaintiff's accomplishments
11   and shortcomings, expressly stating factual bases for its allegedly defamatory assertions; and wrote
12   positive and negative statements in review of the plaintiff, with the negative feedback including,
13   "'usually delegates all support activities rather than assuming a role as a deliverer of support
14   services[,] . . . his main job focus as 'project manager' has been questioned at times by customers,
15   [third] parties[,] and peers[;] . . . [and his] lack of concern for information needed by [management]
16   has substantiated these observations.'" *Id*.  Further, the defendant's managing employee set out
17   actionable methods for improvement for the plaintiff, including for him to, "'[p]rovide accurate,
18   pro-active approach to project business by: [¶] (1) documenting all verbal correspondence (CPC)
19   [¶] (2) exhibiting ownership for project problems (CPC) and [¶] (3) taking ownership during project
20   changes and treating all project team members with professionalism.'"  The review included space
21   for the plaintiff's disagreement. *Id*.  Finally, the plaintiff had received positive evaluations both
22   before and after the evaluation at issue (*id*. at 970) and did not suffer any adverse employment
23   actions due to the evaluation (*id*. at fn. 15).

24   Unlike *Jensen*, Plaintiff has not alleged these statements were contained in an employee
25   evaluation or limited to Defendant's employees' review.  Instead, Plaintiff alleges these statements
26   were made to "others" not under Defendant's employ and even to "prospective employers" of
27   Plaintiff. (ECF No. 1 at 7.)  Plaintiff's allegations show these statements to be void of express
28   factual basis in their communication since Plaintiff alleges various members of Defendant's

managing employees published she was "not teachable," a "poor leader," "punitive" to staff, not "The-Well type staff," and "incompetent" in her position. (*Id.*) Plaintiff alleges these statements constitute defamation per se because the statements communicate "that Plaintiff was a problematic, incompetent and poorly performing employee who deserved to be terminated from her job." (*Id.*) Unlike *Jensen*, Defendant's managing employees published this information to people without the privilege to hear it, did not disclose areas of improvement for Plaintiff to Plaintiff, did not contain the information in an employee evaluation, did not offer positive feedback of Plaintiff, did not offer a space for Plaintiff to record disagreement with Defendant's statements, and did not offer multiple rounds of review to Plaintiff.  Further, statements concerning Plaintiff's competency and leadership capabilities go to her competency for her former position as "Director" and her "punitive" nature is a provable factual assertion.

Accordingly, the Court will deny Defendant's motion to dismiss Plaintiff's fourth claim.

## CONCLUSION

Accordingly, for the reasons explained above:

1. The Court grants Defendant's motion to dismiss (ECF No. 6) Plaintiff's third claim of interference with prospective economic relations without prejudice;
2. The Court grants Plaintiff leave to file a first amended complaint within twenty-one (21) days of the date of this order;
3. The Court denies Defendant's motion to dismiss (ECF No. 6) Plaintiff's first, second, and fourth claims; and
4. The Court denies Plaintiff's request for judicial notice.

IT IS SO ORDERED.

Dated:   December 13, 2022                   _____
                                              UNITED STATES DISTRICT JUDGE

15